**This order is SIGNED.**

 

**Dated: December 19, 2017**

**WILLIAM T. THURMAN
U.S. Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF UTAH

| In re:<br><br>Chad A. Passa and Lisa M. Hart,<br><br><br>Debtor. | Bankruptcy Number: 14-25369<br><br>Chapter 13<br><br>Judge William T. Thurman |
|---|---|

**MEMORANDUM DECISION**

The matter before the Court is the Debtors' Motion for Sanctions for Violation of the Automatic Stay, and the Debtors' Motion for Sanctions for Violation of the Discharge Injunction. Because the facts and law overlapped, the Court consolidated those matters for hearing. Scott Mitchell appeared on behalf of the Debtors. Albert Pranno appeared on behalf of the Creditor, Mr. Kelly G. Clark.

After review of the pleadings filed, and based upon the oral arguments and evidence presented by the parties at the hearing, the Court took the matter under advisement and then

1

issued a bench ruling and an order, reserving the right and option to memorialize the ruling in this memorandum decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).

## I. Jurisdiction, Venue and Notice

The jurisdiction of this Court is properly invoked under 28 U.S.C. § 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2) and this Court may enter a final order. Venue is proper under the provisions of 28 U.S.C. §§ 1408 and 1409. Notice of all of the hearings is found to be adequate in all respects.

## II. Facts

The allegations in this matter involve two parcels of residential property, owned by Debtor Lisa Hart. The homes are located in Magna, Utah and Draper, Utah, and will be referred to as the Magna Property and the Draper Property, and together as the Properties. The Properties are located in Salt Lake County. When the Debtors' chapter 13 plan was confirmed, the Debtors agreed to pay the mortgages on the Properties directly and retain the Properties.

Before the bankruptcy petition was filed, the Creditor filed two lawsuits in state court, one against Debtor Lisa Hart, and one against both Debtors, Lisa Hart and Chad Passa, as well as a third defendant who is not part of the bankruptcy. Accordingly, these were both based on pre-bankruptcy claims and facts. The parties have referred to these lawsuits as the "Domestic Matter" and the "Conspiracy Matter." The Court will use those references, without making any finding about the nature of the underlying matters.

On May 22, 2014, the Debtors filed a chapter 13 petition. The lawsuits filed by the Creditor were listed on Schedule F as "domestic litigation" and were marked unliquidated and disputed. Upon the filing of the petition, the lawsuits were stayed by operation of the automatic stay found at 11 U.S.C. § 362(a).[1] On August 14, 2014, the Creditor filed a motion for relief from stay to proceed with litigation regarding the Domestic Matter and the Conspiracy Matter. On October 7, 2014, an order was issued granting that motion (Exhibit #1) which specifically stated: "The automatic stay is lifted as to the domestic matter involving Debtor Hart, and as to the Conspiracy matter involving both Debtors for the purpose of liquidating the amount of the claim; however no judgment may be entered by the state court as to findings of non-dischargeability." The second paragraph of the order states that "Any judgment rendered in either matter may be presented in Bankruptcy Court as a claim, but no collection efforts on the judgment may occur."

After confirmation of Debtors' chapter 13 plan, on November 4, 2014, the Creditor obtained a Judgment and Order in the Domestic Matter, awarding $116,000 against Ms. Hart (Exhibit #2). The Order states that Ms. Hart should begin making $655 monthly payments. No evidence was entered that she actually made those payments. On April 10, 2015, the Creditor obtained a judgment in the Conspiracy Matter against Ms. Hart and Mr. Passa, awarding $125,000 in compensatory damages and $125,000 in punitive damages, for a total judgment of $250,000. The Debtors did not appear or defend against those matters and as a result, default judgments were entered. The Court will refer to both judgments together as the "Judgments."

---

[1] Hereafter, all references to section or § shall refer to Title 11, United States Code unless specifically stated.

3

The Creditor brought the Judgments back to this Court in the form of two proofs of claims dated November 18, 2014 (Exhibits 28 and 29) which is all that the Court authorized.

Also on November 18, 2015, the same day that the Creditor filed the proofs of claim, the Creditor recorded the Judgments in both the Conspiracy and Domestic Matters with the Salt Lake County Recorder (the "First Recorded Judgments"). The testimony at the hearing on these motions was that the Creditor acted without legal advice and recorded those Judgments on his own initiative.

Approximately two years later, the Debtors completed their chapter 13 plan payments. On September 13, 2017, they received their discharge by order of this Court. Shortly thereafter, on September 22, 2017, the Creditor recorded the Conspiracy Matter Judgment again in the Salt Lake County Recorder's Office (Exhibit 21), (the "Second Recorded Judgment or Judgments"). It is unclear if the Domestic Matter Judgment was rerecorded. At the hearing, it seemed that all parties assumed both Judgments had been recorded again, however Exhibit 21 shows only that the judgment against Ms. Hart and Mr. Passa for $250,000 in the Conspiracy Matter was recorded again. The Court does not have evidence that the $116,000 judgment in the Domestic Matter was recorded again after the discharge was issued. Mr. Pranno, counsel for Mr. Clark, stated in his closing argument that his office recorded both of those Judgments on behalf of the Creditor.

On September 29, 2017, the Debtors filed a Motion for Sanctions for Violation of the Automatic Stay, alleging that the First Recorded Judgments caused sales of the Properties owned by Ms. Hart to be delayed and causing other damages. When the Debtor sought to sell the

Properties, she discovered the Judgments had been recorded, and were liens on the title of both Properties.

After a preliminary hearing was conducted and continued on the Motion for Sanctions for Violation of the Automatic Stay, the Debtors filed a Motion for Sanctions for Violation of the Discharge Injunction against both the Creditor and his attorney on October 28, 2017. The Court consolidated the hearings on both Motions for Sanctions. As a result, there are two separate matters before the Court, i.e. the motion alleging violation of the stay and the motion alleging violation of the discharge injunction. The main difference between the two is timing. The issuance of a discharge order eliminated the stay and substituted a discharge injunction which is addressed hereafter.

On November 2, 2017, the Creditor released the First Recorded Judgments. The evidence is that the Second Recorded Judgment or Judgments that was or were rerecorded in September 2017 have not been released. Neither property has sold yet. The buyer for the Magna Property has cancelled the Real Estate Purchase Contract (Exhibit 26). The sale of the Draper Property was postponed until December 8, 2017.

**III.  Initial holdings**

The Creditor has made several miscellaneous arguments, which the Court will address before moving on to the substance of the Motions for Sanctions.

The Creditor argued that the Debtors were not eligible to be debtors under chapter 13 because the chapter 13 trustee's final report stated that $470,409.03 of unsecured debt had been discharged, and the debt limit for a chapter 13 debtor is $394,725 under § 109(e). This argument

is unavailing. The debt limit is evaluated on the petition date, and includes only noncontingent and liquidated claims. On the petition date, the Debtors listed approximately $78,532 in liquidated, unsecured debt. The Court finds that the Debtors were within the debt limit for chapter 13 relief. The fact that some debts are later liquidated to a sum certain does not vitiate the initial filing or make the Debtor ineligible for chapter 13 relief.[2]

Next, the Creditor argued that the Debtors were dealing with "unclean hands" because they listed the Properties for sale before they received a discharge. However, when asked, he could not cite any law or rule that the Debtors had violated. The Court has not found any violation either. The Court finds that there was nothing improper about the Debtors listing the Properties for sale, or entering into Real Estate Purchase Contracts, while their bankruptcy case was pending. Their plan had been completed and the Trustee had recommended a closing of their case as of the time of the listings. The Properties had been fully disclosed during the confirmation process. Furthermore, these Properties were listed in the plan as being treated "outside the Plan." That is a sometimes inartful phrase, but commonly means that the debts associated with the Properties will be paid directly and not through the chapter 13 trustee and that the related properties will be retained by the Debtors.

Finally, the parties also spent significant time discussing whether or not the Judgments were dischargeable or non-dischargeable. That matter is not properly before the Court. The

---

[2] *See generally Adams v. Adams (In re Adams)*, 373 B.R. 116 (10th Cir. BAP 2007).

Creditor filed two motions[3] that discussed several legal theories, including non-dischargeability, but they were not noticed for hearing under Local Rule 9013-1. In addition, a non-dischargeability action should comply with Rules 4007 and 7001, which require a timely filed adversary proceeding. That has not been done. Accordingly, the Court makes no finding today about whether or not the judgments were non-dischargeable.

IV.    **Violation of the Automatic Stay**

The Creditor recorded the First Recorded Judgments in November 2015 and hence while the automatic stay was still in place. He testified that he believed he was preserving the Judgments by recording them, but was not taking any collection action.

Section 362(a)(4) and (5) prohibit "any act to create, perfect, or enforce any lien against property of the estate; [or] any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title." Recording the Judgments with the Salt Lake County Recorder created liens against real property owned by the Debtors. As such, it was a collection action that violated the automatic stay and this Court's order. This Court's order lifting the stay specifically prohibited any collection activity. Despite counsel's arguments to the contrary, the Court's order did not in any way authorize the Creditor to secure his Judgments. The order allowed the Creditor to liquidate the claims to judgment, and then bring the Judgments back to this court. That was all. Under Utah law, the obtaining of a judgment does not create any lien on real estate. It takes

---

[3]Motion to Reopen Case, filed Nov. 15, 2017 at Dkt. No. 85 and Motion to Consolidate and/or Continue Hearing, filed Nov. 15, 2017 at Dkt. No. 86.

another act to make a judgment a lien, i.e. recording the same in the county where the judgment debtor owns real property or resides.[4] Enforcing the Judgments by recording them is clearly an act of collection.

The Creditor argued that he did not violate the automatic stay because he did not intend to collect a debt; his only intention was to preserve the Judgments for later collection. That argument still demonstrates an intent to collect a debt, just at a later date. Regardless, the Creditor's intent is not controlling in this situation. The Tenth Circuit Court of Appeals made that clear when it stated: "Thus, we hold that in order to demonstrate a violation of § 362(k)(1), the debtor bears the burden of establishing, by a preponderance of the evidence, that the creditor knew of the automatic stay and intended the actions that constituted the violation; no specific intent is required. Accordingly, a creditor's good faith belief that it had a right to the property is irrelevant."[5]

This Court holds that Mr. Clark's argument that he had a right to secure the Judgments for later collection is likewise irrelevant and unavailing. He knew of the automatic stay, and he intended to record the Judgments. The Debtors have carried their burden of proof in this issue. The Court finds from credible evidence that the Creditor willfully violated the automatic stay when he recorded the First Recorded Judgments in November 2015.

---

[4]*See* Utah Code Ann. § 38-5-1.

[5]*Johnson v. Smith (In re Johnson)*, 501 F.3d 1163, 1172 (10th Cir. 2007) (internal citations omitted).

### A. Damages for violation of the automatic stay

Section 362(k)(1) states that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and in appropriate circumstances, may recover punitive damages." The injured party is to prove damages by a preponderance of the evidence. "[S]upport for employing the preponderance standard is found in the text of § 362(k)(1), which imposes a condition for recovery of punitive damages but not for actual damages, attorney's fees, or costs. The subsection's allowance for punitive damages only 'in appropriate circumstances' suggests that a stricter evidentiary standard should apply only to a determination on punitives."[6] "The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay."[7]

The Creditor argued that the Debtors needed to prove that the sales of the Properties were ready to close, and were prevented from closing solely due to the judgment liens. The Creditor argued that the buyer of the Magna Property had not conducted an inspection or appraisal or undertaken other activity to prepare for purchase, and therefore the judgment liens were not causing the delay. The Court is not persuaded by this argument. The reason a title search is done early in the home-buying process is so a buyer may discover whether or not the property is available for sale. Buying a home is an expensive process. A reasonable buyer may decide to not

---

[6] *Id*. at 1171 (internal citation omitted).

[7] *Id*. (quoting *Ramirez v. Fuselier (In re Ramirez)*, 183 B.R. 583, 589 (9th Cir. BAP 1995)).

invest the time and money to inspect and appraise a property if there is a cloud on the title. The Debtors need to prove damages only by a preponderance of the evidence. This evidence was provided by Ms. Hart's testimony that the closings were delayed due to the liens on the title, and the Court finds her testimony to be credible. The Court finds that the First Recorded Judgments caused the sales to be delayed.

      Accordingly, the Court awards damages for the violation of the automatic stay. The actual damages in this matter are the expenses incurred by the Debtors when the judgment liens interfered with the sales of the two Properties. Ms. Hart credibly testified about the monthly expenses that accrued while she continued to own the Magna Property and the Draper Property. On both Properties, the monthly expenses include the mortgage payment, and the expenses for water, utilities and gas. The Creditor argued that some of those expenses were estimates. Indeed, the Debtor testified to the fact that she was estimating some of the expenses because the billing cycles for the water and utility bills had not yet closed. Estimates were all that were available at the time. The Court finds this to be reasonable. Since that hearing, some of those billing cycles have closed, and the Debtor submitted some updated bills.

      The Debtors summarize that the expense of the Magna Property is $671.52 per month, which works out to about $22.38 per day. The Court finds this amount to be reasonable.

      The Debtors summarize that the expense of the Draper Property is $2,861.31 per month. The Court finds that the Debtors did not support this computation with a preponderance of the evidence. The mortgage payment on the Draper Property is $1,787.39 per month. The Debtor estimated the utility costs for the Draper Property, but that alone was not enough to reach

$2,861.31. The Debtor, Ms. Hart, testified she was renting out the Draper Property for $2,250 per month. The Court assumes that this rental payment was enough to pay the mortgage and utility bills on the Draper Property. Accordingly, the Court finds that a reasonable monthly expense for the Draper Property is $2,250.00, based on the rental amount. That works out to be about $75.00 per day.

The next calculation is the number of months or days of expenses that the Debtors accrued due to the delayed sale of the Draper Property, and the cancelled sale of the Magna Property. The Court used the number of days between the original closing dates for the Properties, and the date the liens recorded in November 2015 were released. The first judgment liens were released on November 2, 2017.

The Magna Property was originally scheduled to close on October 23, 2017. There are 10 days between that date and November 2, 2017. Actual damages for violation of the automatic stay are therefore $223.80 as of that day.

The Draper Property was originally scheduled to close on October 12, 2017. There are 21 days between that date and November 2, 2017. Actual damages of the automatic stay are therefore $1,575.00 as of that day on the Draper Property.

This totals $1,798.80 in actual damages for both Properties together.

According to § 362(k), the Debtors are also entitled to recover attorney fees for willful violations of the stay. Mr. Mitchell is allowed to file an affidavit of attorney fees incurred for his representation of the Debtors in bringing this matter before the Court for this willful violation of the automatic stay. Mr. Mitchell is allowed to file a Notice of Hearing along with the affidavit,

and set the matter for hearing. He is allowed to include the amount of time he spends in preparing his fee application. Mr. Mitchell has 14 days from the date of this ruling to submit the same for hearing.

Section 362(k) allows a recovery of punitive damages "in appropriate circumstances." While the Debtors requested punitive damages, the request was not supported by case law and analysis showing how an award of punitive damages was justified nor was sufficient evidence submitted to justify a finding of punitive damages. Accordingly, the Court elects not to award punitive damages for violating the automatic stay.

The damages did not end when the Creditor released the First Recorded Judgment liens in the County Recorder's office on November 2, 2017. As stated, the Judgments had been rerecorded in September 2017, which created additional liens and damages which must also be addressed.

## V.     Violation of the Discharge Injunction

A violation of the discharge injunction involves a separate legal standard and analysis that is distinct from a violation of the automatic stay. Once a chapter 13 debtor completes a plan, an order of discharge is entered. Pursuant to § 524(a)(1), "a discharge in a case under this title – voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727, 944, 1141, 122, or 1328 of this title, whether or not discharge of such debt is waived." The order of discharge thus voided the Judgments obtained by the Creditor as they were based on pre-bankruptcy claims. Further, the discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any

such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." § 524(a)(2). The discharge order enjoined the Creditor from continuing to collect on the Judgments. Furthermore, no relief from this Court's prior order forbidding collection efforts was obtained. That order was issued during the time that the stay was in place, but language and intent prohibiting collection efforts was not superceded by the issuance of the discharge injunction. The order still remained in effect.

The Creditor cited § 1328(a)(4) as grounds for excepting the Judgments from discharge. That section excepts from discharge debts "for restitution, or damages, awarded in a civil action against the debtor as a result of willful or malicious injury by the debtor that caused personal injury to an individual or the death of an individual." The Creditor alleged that the Judgments were a result of willful or malicious injury, but there was inadequate evidence presented that a personal injury or death was involved.[8] The Court does not have before it a complete record of the Judgments and the lawsuits and facts leading up to them. While it cannot make a full determination of the nature of the Judgments under bankruptcy law, it does not appear that section 1328(a)(4) is applicable to the Judgments because no personal injury or death has been alleged. Furthermore, notwithstanding §1328, a timely filed adversary proceeding is necessary for any determination of non-dischargeability for willful or malicious injury as required by § 523(a)(6) and Bankruptcy Rules 4007 and 7001. No adversary proceeding has been filed.

---

[8] It is possible that a claim for malicious injury to property or personal rights could be asserted by the Creditor, however, procedural requirements must be followed.

The Creditor also made a reference that the divorce Judgment was non-dischargeable because it related to a domestic matter. No proceeding has been filed with this Court for such a determination and the Court makes no finding or conclusion on the same, only that without such a finding or conclusion, the argument of the Creditor fails here.

The order of discharge in a chapter 13 case discharges "all debts provided for by the plan." That language is in § 1328(a). The debts represented by these Judgments were treated in the Debtor's chapter 13 plan. The legal actions were properly listed in the Schedules. The Trustee's Final Report and Account,[9] which the Court takes judicial notice of, and the Debtors' chapter 13 plan showed that the Creditor received $553.98 on one judgment claim, and $257.04 on the other judgment claim. Accordingly, the two judgment debts were treated in the plan.

There are two types of discharges available in a chapter 13 case. One is a 'full compliance' discharge, which a debtor earns by completing all plan payments and is governed by § 1328(a). The other discharge is a hardship discharge, which provides for a more limited discharge, and is governed under § 1328(b) which is not applicable here. The Court finds that the Debtors fully complied with their plan and were properly granted a discharge under § 1328(a).

The 'full compliance' chapter 13 discharge is a broader discharge than a chapter 7 discharge, meaning a larger category of debts are discharged. In other words, some debts that are non-dischargeable in a chapter 7 case may be discharged in a chapter 13 case. One category of debts that can be discharged in a full compliance chapter 13 case is a property settlement related to a divorce. That type of debt is described in § 523(a)(15). The Creditor did not argue that either

---

[9]Filed on Sept. 6, 2017 at Dkt. No. 65.

of the Judgments fell into this category, and the Court makes no determination about whether they do or not.

As previously stated, at least one Judgment was recorded again on September 22, 2017, which was about a week after the order discharging the debtors was entered. The Creditor testified, and his attorney stated, that as soon as the discharge came through, the Creditor directed his attorney to record the Judgment again, and his attorney recorded it. The Creditor's attorney reiterated in his closing argument that he, or his office, recorded the Judgment again after the discharge. This recording has not been released.

The bankruptcy statutes do not give a debtor a private right of action for violation of a discharge injunction in the same way a debtor has a right to damages for violation of the automatic stay. However, when the discharge injunction is violated, "the Tenth Circuit has made clear that a debtor may file a motion to sanction a creditor for violating § 524(a)(2), pursuant to the Court's civil contempt powers derived from 11 U.S.C. § 105."[10]

The burden of proof is different for finding a violation of the discharge injunction. Instead of a preponderance of the evidence, the violation must be proven by clear and convincing evidence. "The movant must prove that the creditor (1) knew the discharge injunction was applicable and (2) intended the actions which violated the injunction."[11]

---

[10] *Otero v. Green Tree Servicing, (In re Otero)*, 498 B.R. 313, 319 (Bankr. D. N.M. 2013) (citing to *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303 (10th Cir. 2008)).

[11] *Id.* (citation omitted).

This standard has been met, as both the Creditor and his attorney spoke about the post-discharge recording of the Judgment in the evidentiary hearing. Recording the Judgment in September 2017 was clearly a continuation of an action to collect a debt, within the meaning of § 524(a)(2). The Creditor testified that he intended to collect the Judgment and that is why he directed Mr. Pranno to record the Judgment again once he received notice that the Debtors had received a discharge of their debts.

The Creditor spoke extensively about the fact that the Commitments for Title Insurance (Exhibits 17 and 18) had reversed the order of the parties in the Judgments and questioned whether the title report was even accurate, arguing that it was not compelling evidence that the Judgments had been recorded. This was an error by the title company as the referenced Judgments and the dates of recording tied exactly to the Judgments recorded by the Creditor. But the title company's error becomes moot in light of the parties' statements and testimony at the evidentiary hearings. It was the rerecording of the Judgments that violated the discharge injunction, not the accurate or inaccurate description of them contained in the Commitments for Title Insurance.

The Court finds by clear and convincing evidence that the Creditor and his attorney, Mr. Pranno, violated the discharge injunction when they rerecorded the Judgments after the discharge order had been entered.

### A. Damages for Violation of the Discharge Injunction

Damages for a violation of the discharge injunction are awarded under the authority of § 105(a) as it supplements §524. Not surprisingly, they tend to run parallel to damages for violations

of the automatic stay. "In cases in which the discharge injunction was violated willfully, courts have awarded debtors actual damages, punitive damages and attorney's fees."[12]

The Court thus adopts the same amounts awarded as damages for violation of the automatic stay. The actual damages for the Magna Property will be $22.38 per day, and the actual damages related to the Draper Property will be $75.00 per day. The time period for calculating damages will begin on November 3, 2017. The Court determines this is appropriate because these post-discharge judgment liens are still in force and are still delaying the marketing and sale of the Properties, although the prior judgment liens have been released.

The Court will assess damages based on the assumption that the Creditor will release the Judgment or Judgments today, Friday, December 1, 2017. Damages for the discharge injunction begin to accrue on November 3, 2017. For the Magna Property, damages are calculated at $22.38 per day. There are 28 days between November 3 and December 1. Damages are thus $626.64 for the Magna Property, as of December 1st. For the Draper Property, using the same time frame and the amount of $75.00 per day, the damages are $2,100. The total damages for violation of the discharge injunction for both Properties are $2,726.64.

The Court orders the Creditor to release the liens today. The Creditor shall file with the Court proof of the date the liens were released. The Court specifically will grant the Debtors' other portion of their motions and orders that the Second Recorded Judgment or Judgments

---

[12] *In re Otero*, 498 B.R. at 321 (quoting Collier on Bankruptcy (16th ed.) ¶ 524.02[2][c]).

recorded in September 2017 against the Debtors are discharged and the liens associated therewith are null and avoid, effective December 1, 2017.[13]

The Court awards attorney fees for bringing the matter regarding the violation of the discharge injunction on the same terms described above. One fee application that combines all time spent on both the automatic stay matter and the discharge injunction matter is sufficient.

## VI.  Additional Sanctions against Counsel for Mr. Clark

The Court now turns to a discussion of the additional claims which the Debtors have requested against the Creditor's attorney, Mr. Pranno.

The Court determines that damages against Mr. Pranno are appropriate. During the evidentiary hearings, Mr. Pranno stated that he was not an expert in bankruptcy law. The Court does not encourage the attorneys who appear before it to offer excuses for their lack of expertise. By appearing in bankruptcy court, an attorney is expected to understand bankruptcy law well enough to represent a client. Mr. Pranno's reasons for recording the Judgment again after the discharge are not persuasive to this court as the Court finds and concludes he intentionally and willfully participated with Mr. Clark in rerecording the Second Recorded Judgments in September 2017 by clear and convincing evidence. As a result, he, along with his client, are responsible for the damages suffered by the Debtors.

---

[13]This matter was brought before the Court as a violation of the automatic stay and the discharge injunction, which are contested matters that are governed procedurally by Rule 9014(c). Rule 9014 adopts several rules in the 7000 series that govern adversary proceedings. The Court's scheduling order (filed on Nov. 9, 2017 at Dkt. No. 82) for this matter adopted Rule 9014 and thus incorporated the adversary proceeding rules that are specified in Rule 9014(c). Thus, even though an adversary proceeding was not filed, evidentiary hearings were held and the Court determines that sufficient due process was afforded to the Creditor before the liens were determined to be null and void.

The court awards actual damages against Mr. Pranno in the same amount as awarded against his client for the violation of the discharge injunction, i.e., $2,726.64, plus any attorneys fees Mr. Mitchell may show he incurred in seeking to have the Second Recorded Judgments released. This is a joint and several obligation of Mr. Pranno and Mr. Clark.

**VII. Conclusion and Summary**

For violation of the automatic stay, the Debtors are awarded actual damages of $1,798.80. These damages are the sole responsibility of the Creditor, Mr. Clark.

For violation of the discharge injunction, the Debtors are awarded damages of $2,726.64. These damages are a joint and several obligation between Mr. Clark and Mr. Pranno.

Of the attorney fee award, Mr. Clark will be solely responsible for fees incurred by Mr. Mitchell before September 22, 2017, the date the Judgment or Judgments were recorded again. Mr. Clark and Mr. Pranno will be jointly and severally liable for attorney fees incurred after that date.

All of the Judgment liens are deemed null and void and the Creditor shall release them not later than today, December 1, 2017.

The Court, having previously issued its oral ruling in this matter and written order, submits this Memorandum Decision to memorialize the same. The order will reserve the issue of attorney fees until after Mr. Mitchell has filed his fee application.

# SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION** shall be effected on the parties listed below:

Chad A. Passa
Lisa M. Hart
6274 South Palomar Place
West Valley City, UT 84118
 *Debtors*

Scott Mitchell
2469 East 7000 South, Suite 204
Salt Lake City, UT 84121
 *Attorney for Debtors*

Kelly Clark
c/o Albert Pranno
P.O. Box 4276
Salt Lake City, UT 84110
 *Creditor*

Albert Pranno
Pranno Law, PLLC
P.O. Box 4276
Salt Lake City, UT 84110
 *Attorney for Creditor*